# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL W. BROWN,               )
                                )
       Plaintiff,               )
                                )
  v.                            )     1:14CV432
                                )
CATHY H. JOHNSON, et al.,       )
                                )
       Defendants.              )

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 2), and Plaintiff's Motion for Temporary Restraining Order (Docket Entry 4). The Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of this action, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. Given that recommendation of dismissal, the Court should deny as moot Plaintiff's Motion for Temporary Restraining Order.

LEGAL BACKGROUND

"The federal *in forma pauperis* ['IFP'] statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont

de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing [IFP] d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the IFP statute provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2). A complaint falls short when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

## DISCUSSION

Plaintiff's Complaint names Cathy H. Johnson and Monta Davis Oliver, both employees of the Yadkin County Department of Social Services, as Defendants. (Docket Entry 2 at 1-2.)[2] It asserts that Defendants improperly failed to consider his applications for two North Carolina energy assistance programs (see id. at 2-3) and that Defendants failed to assist him after the disconnection of his electricity service (id. at 4-6). Based on those allegations, Plaintiff's Complaint alleges violations of his procedural due process rights and asserts claims pursuant to 42 U.S.C. §§ 1981,

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

[2] Plaintiff's Complaint includes in the caption the term "et. all [sic]" but does not identify any additional Defendants by name. (See Docket Entry 2 at 1-11.)

3

1983, 1985(3), and 1986, as well as state-law claims for libel, misconduct in public office, negligence, and interference with contract rights. (Id. at 3-5.) In support of Plaintiff's claims, the Complaint offers the following factual allegations:

1) "[o]n or about 02/10/2014, [Plaintiff] went to the Yadkin County Department of Social Services office and applied for the North Carolina Energy Programs Plan" (id. at 2);

2) "[Defendant] Johnson is the [Plaintiff's] case worker . . . . [and] [Defendant] Oliver [is] [Defendant] Johnson[']s supervisor" (id. at 3-4);

3) "[Plaintiff was] approved for L[ow] I[ncome] E[nergy] A[ssistance] P[rogram] ["LIEAP"] funding found in section[] 300 of the Energy Manual . . . . [and] C[risis] I[ntervention] P[rogram] ["CIP"] funding found in section[] 400 of the Energy Manual" (id. at 2-3);

4) "[Plaintiff was] not considered, nor denied, nor approved for potential services found in section[] 200 of the Energy Manual . . . . [or] in the Home Energy Assistance Program" (id. at 3);

5) "[o]n or about 04/09/2014, [Plaintiff] received from Surry-Yadkin Electric Membership Corporation, a termination notice of disconnect date of 05/08/2014, for not receiving payment for the March bill" (id. at 6);

6) "[Plaintiff] had to borrow money to pay $154.40 dollars [] which should have been payed by the North Carolina Energy Programs, to avoid a disconnect" (id.);

7) "[o]n or about 05/09/2014, [Plaintiff] contacted by phone, [Defendant] Oliver . . . and discussed [Plaintiff's] considerations of denial or approval for potential services from federal, and state, and[/]or other organizations opportunity to provide outreach" (id. at 4);

8) "[Defendant] Oliver . . . stated to [Plaintiff] that there was nothing that she could do . . . ." (id.); and

9) "[Defendants] knew or should have known that they were violating clearly established state regulations of which a reasonable person would have known at the time their acts were committed" (id. at 6).

Based on the foregoing allegations, Plaintiff's Complaint seeks the following relief:

1) a declaratory judgment "interpreting imperatives within the North Carolina Energy Programs Regulations Manual" (id. at 9);

2) a "temporary restraining order and/or preliminary injunction . . . stopping the immeadiate [sic] and irreparable disconnection of [Plaintiff's] power" (id. at 10);

3) compensatory damages including special damages totaling $164.40, plus postage incurred in mailing the Complaint, as well as general damages;

5

4) "[Plaintiff's] fees for legal work[] and . . . all court cost[s] and taxes incurred . . . involving the cost of this litigation; (id. at 11) and

5) punitive damages for "misconduct in public office[] and . . . failure to perform duties" (id.).

As an initial matter, Plaintiff's Complaint asserts claims under several federal civil rights statutes which exclusively concern discrimination based on race (or potentially, in the case of §§ 1985 and 1986, other class-based animus). However, Plaintiff's Complaint makes no mention of race whatsoever, or any other protected class. (See id. at 1-11.) Plaintiff asserts that "[c]onsideration of denial or approval for potential services from federal, and state, and[/]or other organizations to provide outreach arbitrarily violates title 42 U.S.C.S. § 1981" (id. at 4); however, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship," Domino's Pizza, Inc. v. McDonald, 126 U.S. 470, 476 (2006). Plaintiff also invokes 42 U.S.C. §§ 1985(3) and 1986 (Docket Entry 2 at 4) notwithstanding that § 1985(3) requires proof of a conspiracy with "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," Griffin v. Breckinridge, 403 U.S. 88, 102 (1971), and that "[r]ecovery under § 1986 depends on the existence of a conspiracy

6

under § 1985," Bowie v. Maddox, 642 F.3d 1122, 1128 (D.C. Cir. 2011). Given that Plaintiff's Complaint contains no allegations as to race (or a conspiracy of any kind), Plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1985(3), and 1986 fail as a matter of law.

For this reason, only Plaintiff's § 1983 and state-law claims remain. Plaintiff's Complaint does not specify whether the asserted § 1983 claim originates from a federal constitutional violation, a federal statutory violation, or both. (See Docket Entry 2 at 7 ("[Plaintiff] hereby [has] good cause to believe that Title 42 U.S.C.S. § 1983 permits [Plaintiff] to sue for the deprivation of any rights, privileges, and immunities secured by the Constitution and laws, caused by persons acting under color of state law, provides the basis for this cause of action and remedy for this lawsuit.").) However, the Fourth Circuit has held that the federal statute which establishes funding for state-administered energy assistance programs, the Low Income Home Energy Assistance Act, does not create a substantive right enforceable through § 1983. Hunt v. Robeson Cnty. Dep't of Soc. Servs., 816 F.2d 150, 152 (1987). Furthermore, Plaintiff's Complaint does not identify an alternate federal statute to support a § 1983 claim. (See Docket Entry 2 at 1-11.)

The United States Supreme Court has recognized that the expectation of continued utility services may constitute a property interest protected by the Due Process clause of the Constitution.

7

See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11 (1978). A § 1983 claim premised on a violation of the constitutional right to procedural due process, however, would fail because Plaintiff has not availed himself of available state administrative remedies. Although § 1983 generally does not require a plaintiff to exhaust administrative remedies, Patsy v. Board of Regents of Fla., 457 U.S. 496, 516 (1982), "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983," Wax 'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000) (emphasis added) (citing cases from the First, Second, Seventh, and Eleventh Circuit Courts of Appeal). "This rule . . . recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora — agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (internal quotation marks omitted). In other words, "[i]f adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." Id.

Plaintiff's Complaint fails to assert that he took any action seeking state administrative (or judicial) remedies (see Docket

Entry 2 at 1-11), notwithstanding that North Carolina law afforded Plaintiff the opportunity to challenge a decision - or the unreasonable inaction - of the county department of social services. Chiefly, Plaintiff could have pursued an appeal through North Carolina's administrative process, see N.C. Gen. Stat. § 108A-79(a) ("A public assistance applicant or recipient shall have a right to appeal the decision of the county board of social services, county department of social services, or the board of county commissioners granting, denying, terminating, or modifying assistance, or the failure of the county board of social services or county department of social services to act within a reasonable time . . . ."), and obtained a local appeal hearing before the county director, see N.C. Gen. Stat. § 108A-79(d). Plaintiff then could have challenged that local hearing decision and, subsequently, obtained judicial review by the North Carolina courts. See N.C. Gen. Stat. § 108A-79(g), (i), (j), (k).

Further, to the extent that Plaintiff's Complaint alleges that Defendants neglected to perform their lawful obligations (see Docket Entry 2 at 6 ("[Defendants] knew or should have known that they were violating clearly established state regulations of which a reasonable person would have known at the time their acts were committed."), Plaintiff could have petitioned a state court for a writ of mandamus compelling Defendants to "perform their constitutional or statutory duty," In re Officials of Kill Devil

9

Hills Police Dep't, 733 S.E.2d 582, 587 (N.C. App. 2012) (internal quotation marks omitted). Under North Carolina law, a writ of mandamus

> is the proper remedy to compel public officials, such as members of an administrative board, to perform a purely ministerial duty imposed by law, where it is made to appear that the plaintiff, being without adequate remedy, has a present, clear, legal right to the thing claimed and it is the duty of the respondents to render it to him.

Hamlet Hosp. & Training Sch. for Nurses v. Joint Comm. on Standardization, 234 N.C. 673, 680, 68 S.E.2d 862, 867 (1952). Pursuant to this mandamus authority, "a court of competent jurisdiction may determine in a proper proceeding whether a public official has acted capriciously or arbitrarily or in bad faith or in disregard of the law. And it may compel action in good faith in accord with the law." In the Matter of Alamance Cnty. Ct. Facilities, 329 N.C. 84, 106, 405 S.E.2d 125, 136 (1991). In sum, North Carolina provided Plaintiff access to processes by which he could have sought to vindicate any right purportedly infringed by Defendants.

Furthermore, Plaintiff's Complaint principally challenges Defendants' failure to consider Plaintiff for "potential services found in section[] 200 of the Energy Manual . . . [and] "potential services found in the Home Energy Assistance Program" (Docket Entry 2 at 3.) However, neither of these programs appears to provide any direct energy assistance to individuals. Rather, the Energy

10

Programs Outreach Plan requires county social services departments to "assure that eligible households are <u>made aware</u> of the available [energy] assistance." Energy Programs Manual, North Carolina Dep't of Health & Human Servs., § 200.01 (2012), <u>available at</u> http://info.dhhs.state.nc.us/olm/manuals/dss/ei-40/man/EPs200.htm#P10_140 (emphasis added). Specifically, the Energy Programs Outreach Plan directs county social services departments to work with other local agencies to publicize LIEAP and CIP, <u>see</u> <u>id.</u>, §§ 200.2, 200.8, for which Plaintiff asserts he has already qualified (<u>see</u> Docket Entry 2 at 2-3). As to Plaintiff's reference to the "Home Energy Assistance Program," no program by that name appears in the published list of energy programs administered by the North Carolina Department of Social Services. <u>See</u> <u>Energy Programs Manual</u>, <u>supra</u>, § 100.01. Instead, "Home Energy Assistance Program" likely refers to the federal block-grant program (created pursuant to the Low Income Home Energy Assistance Act) which provides North Carolina with funds to operate LIEAP and CIP. <u>See</u> <u>Hunt</u>, 816 F.2d at 151; <u>Guilford Cnty. Cmty. Action Program, Inc. v. Wilson</u>, 348 F. Supp. 2d 548, 557 (M.D.N.C. 2004).

Even assuming that Defendants improperly failed to consider Plaintiff's applications for any heating assistance programs – and to the extent that Plaintiff's Complaint also challenges Defendants' purported refusal to otherwise assist him following the termination of his service – Plaintiff's federal procedural due

11

process claim nonetheless fails as a matter of law for the reasons discussed above. Plaintiff's only remaining claims arise under state law. "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

However, "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In light of the recommended dismissal of the federal claims at the pleading stage and the absence of grounds for the exercise of diversity jurisdiction,[3] the Court should decline

---

[3] The Complaint identifies Plaintiff and Defendants as residents of Yadkin County, North Carolina. (Docket Entry 2 at 1-2.) Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1332(a).

to exercise supplemental jurisdiction over Plaintiff's state-law claims and, instead, should dismiss those claims without prejudice.

As a final matter, given this recommendation of dismissal for failure to state a claim, Plaintiff's Motion for Temporary Restraining Order (Docket Entry 4) should be denied as moot.

## CONCLUSION

Plaintiff's Complaint falls short as a matter of law.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order (Docket Entry 4) be denied as moot.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 12, 2014